**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bathsheba Nichole Adams,<br><br>                     Plaintiff,<br><br>v.<br><br>Kiewit Infrastructure West Company, et al.,<br><br>                     Defendants. | No. CV-25-01823-PHX-DJH<br><br>**ORDER** |

On July 1, 2025, Defendant Kiewit Infrastructure West Co. ("Defendant" or "Kiewit") filed a Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), under Rules 12(b)(1) and 12(b)(6). (Doc. 12). Plaintiff Bathsheba Nichole Adams ("Plaintiff") filed a Response in Opposition (Doc. 15), and Defendant thereafter filed a Reply. (Doc. 18).

**I.    Background**

Defendant Kiewit is a construction company that operates in the State of Arizona. (Doc. 9 at ¶ 3). Plaintiff was previously employed by Defendant and worked in the construction industry. (*Id.* at ¶¶ 10–12). During her employment, Plaintiff faced "multiple alarming incidents involving Kiewit's foreman, [Defendant Robert Young], who subjected Plaintiff to ongoing physical assaults, harassment and retaliation." (*Id.* at ¶ 12). While Plaintiff alleges several instances of discriminatory conduct, the FAC is premised not on discrimination, but rather several discrete incidents occurring between Plaintiff and Defendant Robert Young ("Young"). The specific episodes Plaintiff alleges are:

- "On or about April 25, 2024, Young exposed Plaintiff to a chemical without providing any warning or safety information, causing Plaintiff to experience an allergic reaction that affected her nose, throat, and breathing…While Plaintiff was experiencing a medical emergency, Young refused to show Plaintiff the safety instructions, or assist in any way," (*id.* at ¶¶ 25–27);
- "On or about April 28, 2024, Young referenced the TV show 'The Walking Dead' and stated he would have shot a character named Andrea for 'talking too much'" this was "a thinly veiled threat directed at Plaintiff" and "[t]he following day, Young acted out this scenario by holding up what Plaintiff describes as a work machine gun [later identified as a Milwaukee concrete chipping hammer] to Plaintiff's forehead and saying 'bang,'" (*id.* at ¶¶ 29–31, 34);
- "While Plaintiff was using a portable toilet, Young instructed colleagues to move it, forcing Plaintiff to rush out and soil her clothes, leaving Plaintiff humiliated and traumatized," (*id.* at ¶ 38); and
- "On or about May 1, 2024, Young left Plaintiff, and her coworker, stranded by the roadside in a dead zone, forcing Plaintiff to hitchhike back to her vehicle…When confronted about leaving Plaintiff stranded, Young used profanity and issued threats against Plaintiff." (*Id.* at ¶¶ 44–45).

"The incidents regarding the portable toilet, the exposure to the unknown chemical, and the chipping hammer were intended to cause Plaintiff harm." (*Id.* at ¶ 54). As a result of the above incidents, Plaintiff has suffered severe emotional distress and "can no longer work without the fear of further incidents caused by Kiewit." (*Id.* at ¶ 55). Plaintiff ultimately left her job with Kiewit, and she filed a Charge of Discrimination, "related to the discriminatory conduct only." (*Id.* at ¶¶ 51–52). Plaintiff then brought this suit against Defendants based on the tortious conduct that she allegedly endured at Kiewit. Although initially filed in state court, Defendants removed the case on May 27, 2025. (*See* Doc. 1). Plaintiff filed her FAC on June 17, 2025, bringing Count I for intentional infliction of emotional distress ("IIED"), Count II for assault and battery, Count III for negligent

supervision and training, and Count IV for punitive damages. (Doc. 9 at ¶¶ 57–86). Kiewit now moves to dismiss Plaintiff's FAC.

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). A jurisdictional attack can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial attacks assert that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* With a factual attack, a court may review evidence beyond the complaint without converting the motion into one for summary judgment, and it "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff must show that the court in question has jurisdiction to hear their case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a plaintiff's complaint if it fails to establish subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.  Discussion**

Defendant raises several arguments that dismissal is warranted, including that Plaintiff's tort claims are preempted by the Arizona Employment Protection Act ("AEPA") and the Arizona Civil Rights Act ("ACRA"), Plaintiff failed to exhaust her administrative remedies, Plaintiff's exclusive remedy is under the Worker's Compensation Act, and Plaintiff does not adequately plead vicarious liability. (Doc. 12 at 4–9). Plaintiff disagrees with Defendant on each argument and maintains that her claims are sufficiently pled. (*See generally* Doc. 15). The Court will address Defendant's arguments in turn.

**A.  The AEPA and ACRA**

Defendant first argues that Plaintiff's common law tort claims are preempted by the AEPA and the ACRA.[1] (Doc. 12 at 4). It claims that the workplace harassment Plaintiff alleges "are intertwined with claims of discrimination and protected activity." (*Id.*) However, none of the case law cited by Defendant supports its position that Plaintiff's

---

[1] Initially, the Court notes that the issue here is not whether the AEPA or the ACRA "preempts" Plaintiff's tort claims, rather it is whether either of these statutes provides Plaintiff with her exclusive remedy. *Valdez v. National Retail Transportation, Inc.*, 2016 WL 2992489, *1 n. 1 (C.D. Cal. 2016) ("A state law claim is preempted by federal law, not other provisions of state law."); *Moscona v. California Business Bureau, Inc.*, 2011 WL 5085522, *4 (S.D. Cal. 2011) ("[F]ederal law may preempt *state laws*, not other federal laws.").

- 4 -

claims are precluded by either statute, and the cases regard only claims that were invalidated by the AEPA, not the ACRA.

It has been established that the AEPA "is the exclusive remedy for terminations that violate public policy statutes, and a plaintiff is therefore limited to the remedies provided under statute." *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067, 1076 (D. Ariz. 2002). The common law claim of tortious wrongful termination in violation of the ACRA has been abrogated by the AEPA, but no case has ruled that all common law tort claims are precluded by the statute. *Cronin v. Sheldon*, 991 P.2d 231, 240-41 (Ariz. 1999). In fact, the *Cronin* court acknowledged:

> Importantly, the EPA does not preclude recovery of compensatory damages under federal law within parameters authorized by Title VII of the Civil Rights Act of 1964, nor does it preclude wrongfully terminated employees from pursuing collateral common law tort claims related to discharge from employment, including intentional infliction of emotional distress, negligent infliction of emotional distress, interference with contractual relations, or defamation. Nor does today's decision affect such common law causes of action as assault and battery, fraud, and other protected claims.

*Id.* at 241 (internal citations omitted). Summarizing its holding, the *Cronin* court stated, "while the EPA precludes petitioners' ACRA-based claims for compensatory and punitive damages for tortious wrongful discharge, a panoply of constitutionally protected common law tort remedies remains undisturbed as fully beyond the scope of the EPA." *Id.*

The authority cited by Defendant reaffirms that a claim of termination in violation of public policy is precluded by the AEPA. *See Fallar*, 202 F. Supp. 2d at 1076 (dismissing the plaintiff's termination in violation of public policy tort claim as the AEPA "is the exclusive remedy for terminations that violate public policy statutes"); *Taylor v. Graham Cnty. Chamber of Com.*, 33 P.3d 518, 521–22 (Ariz. Ct. App. 2001) (concluding that the plaintiff's wrongful termination in violation of the ACRA tort claim was barred under the plain language of the AEPA); *Peterson v. City of Surprise*, 418 P.3d 1020, 1025 (Ariz. Ct. App. 2018) ("Because [plaintiff] forfeited her exclusive remedy for sex discrimination under the [ACRA] by failing to file an administrative charge, the EPA does not permit her to refashion her discrimination claim into a retaliation claim under § 23–

1501(A)(3)(c)(ii).").

At most, the AEPA has precluded a negligence claim based on employment discrimination and a negligence per se claim for violations of the ACRA. *See De Silva v. Pima Cnty. Government*, 2024 WL 4751574, *14 (D. Ariz. 2024). Acknowledging the ruling in *Cronin*, the *De Silva* court concluded that, "while the EPA does not preclude all common law tort claims, it does preclude common law tort claims for employment discrimination where there exists a statute that provides a remedy for that discrimination." *Id.* Critically, here, Plaintiff does not bring tort claims based on employment discrimination. None of the claims alleged by Plaintiff—IIED, assault and battery, or negligent supervision—requires a showing of any discriminatory conduct based on a protected status. So, the claims do not conflict with either statutory scheme.

Defendants do not provide any authority that supports the notion that Plaintiff's battery, IIED, and negligent supervision claims are prohibited by either the AEPA or the ACRA.[2] In fact, the *Cronin* court noted the availability of several of Plaintiff's claims, notwithstanding the AEPA. Therefore, the Court will not dismiss Plaintiff's tort claims under either the ACRA or the AEPA.

**B.   Exhaustion of Administrative Remedies**

Defendant next argues that Plaintiff failed to file a timely charge with the Equal Employment Opportunities Commission ("EEOC") or Arizona Civil Rights Division ("ACRD"), and therefore she cannot bring a claim under ACRA or recast her statutory claim as tort claims. (Doc. 12 at 6–7).

Under the ACRA, "the filing of a charge of discrimination with an administrative agency is a prerequisite to filing a lawsuit on the alleged discrimination." *Madden-Tyler v. Maricopa Cnty.*, 943 P.2d 822, 828 (Ariz. Ct. App. 1997). For a charge to be timely, it

---

[2] Defendant is cautioned to exercise greater care when citing legal authority to the Court. Defendant cites a quoted portion of *Fallar* stating "the AEPA precludes all common law tort claims that arise from the same facts as statutory discrimination or retaliation claims" and a quoted portion of *Peterson* stating "where the same conduct forms the basis of both statutory and common law claims, the statutory remedy is exclusive." (Doc. 12 at 4; Doc. 18 at 2–3). However, neither of these quotes appears in their respective case, nor do *Fallar* or *Peterson* stand for such a proposition. Defendant is reminded that it has a duty to verify the accuracy of any referenced case law.

must be filed within 180 days after the alleged unlawful employment practice occurred. *See* A.R.S. § 41-1481(A); *Ornelas v. Scoa Industries, Inc.*, 587 P.2d 266, 266 (Ariz. Ct. App. 1978). Nonetheless, Plaintiff is not attempting to bring a claim under the ACRA or Title VII (*see* Doc. 9 at ¶¶ 57–86), so this timeframe is immaterial here. *Stone v. Charles Schwab & Co. Inc.*, 2025 WL 2829563, *2 (D. Ariz. 2025) ("To bring an *ACRA claim* against an employer, a plaintiff must file a charge of discrimination within 180 days of the alleged unlawful employment practice.") (emphasis added).

As to the latter portion of its argument, Defendants have not provided any authority demonstrating that Plaintiff's tort claims may not proceed. Defendant claims that, because Plaintiff forfeited her statutory claim based on her untimely charge, she "cannot now recast these claims as torts and render the limitation periods in the ACRA and Title VII meaningless." (Doc. 18 at 5). Albeit the only case Defendants cite to support this proposition is *Peterson*. There, the plaintiff failed to timely file a charge with the ACRD, and it was therefore undisputed that the plaintiff could not sue under the AEPA for termination in violation of the ACRA. *Peterson*, 418 P.3d at 1024. For that reason, the plaintiff framed her claim as a constructive discharge in retaliation for reporting violations of the ACRA. *Id.* While the AEPA allows an employee to bring suit for termination in violation of a statute, "[i]f the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute." *Id.* at 1025 (citing A.R.S. § 23-1501(A)(3)(b)). Based on this provision and the plaintiff's forfeiture of her exclusive remedy for sex discrimination under the ACRA, the court held that "the EPA does not permit her to refashion her discrimination claim into a retaliation claim[.]" *Id.*

In short, the holding in *Peterson* turned on the specific provisions of the AEPA and was solely in regard to an AEPA retaliation claim. *See also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004) (employee waived claim for retaliation under what is now § 23–1501(A)(3)(c) by failing to exhaust administrative remedies under the Arizona Civil

Rights Act). The Court, accordingly, will not dismiss Plaintiff's common law tort claims based on *Peterson*.

### C. Worker's Compensation Act

Alternatively, Defendant contends that Plaintiff's claims are barred by the Workers' Compensation Act because it provides the exclusive remedy for workplace injuries. (Doc. 12 at 7–8). Plaintiff responds that the alleged actions constitute willful misconduct such that the exclusive remedy provision does not apply. (Doc. 15 at 7).

The Workers' Compensation Act provides a statutory scheme for a "workers' compensation system designed to provide compensation for accidental injuries arising out of the course of employment." *Stoecker v. Brush Wellman, Inc.*, 984 P.2d 534, 536 (Ariz. 1999). Subject to certain exceptions, § 23-1022(A) provides: "The right to recover [workers'] compensation…for injuries sustained by an employee…is the exclusive remedy against the employer or any co-employee acting in the scope of his employment." And the Act further provides that an "employee…who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer or any co-employee acting within the scope of his employment[.]" A.R.S. § 23-1024(A). "Pursuant to those statutes, unless an employee who is injured on the job has previously rejected the workers' compensation system, the superior court lacks subject matter jurisdiction over any common law tort action that the employee files against a [co-employee] acting within the scope of his or her employment." *Mitchell v. Gamble*, 86 P.3d 944, 947 (Ariz. Ct. App. 2004).

However, "[t]he exclusive remedy provisions of Arizona's workers compensation statutes do not apply when the employee's injury is caused by an employer's 'willful misconduct,' which is defined as 'an act done knowingly and purposely with the direct object of injuring another.' " *Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1129 (D. Ariz. 2003) (citing A.R.S. §§ 23-1022(A-B)). Under this definition, "the alleged negligence or wantonness must be accompanied by the employer's intent to inflict injury upon the employee." *Id.*

Here, taking the allegations as true, Plaintiff has alleged that the "incidents regarding the portable toilet, the exposure to the unknown chemical, and the chipping hammer were intended to cause Plaintiff harm." (Doc. 9 at ¶ 54). Plaintiff's IIED claim is further supported by allegations that "Defendants' conduct was intentional and/or reckless, as evidenced by their position of authority over Plaintiff as foreman and management," and "Defendants' misconduct was wilful all of which indicates a wilful disregard for Plaintiff's life, limb or bodily safety." (*Id.* at ¶¶ 63–64). Moreover, in reconciling the holdings of two Arizona cases, the *Mosakowski* court stated, "a negligence claim is precluded by the workers compensation statutes while a claim for intentional infliction of emotional distress is not precluded." *Mosakowski*, 329 F. Supp. 2d at 1131. As for assault and battery, Plaintiff's claim references intentional conduct like knowingly instructing workers to move a portable toilet while Plaintiff was inside of it and "[h]olding a machine gun to Plaintiff's forehead and threatening to shoot her[.]" (Doc. 9 at ¶¶ 68–69). For this stage of proceedings, Plaintiff has adequately alleged an intent to inflict injury as well as conduct that can be inferred was intended to cause injury. Thus, Plaintiff may maintain her Counts I and II for IIED and assault and battery.

That said, Plaintiff's negligent training and supervision claim is alleged against only Defendant Kiewit and is based upon Kiewit's failure to exercise ordinary care. (*See id.* at ¶¶ 74–78). Plaintiff alleges negligent acts such as failure to exercise ordinary care in investigating incidents, training employees on how to safely use tools, and providing discipline to its employees. (*Id.* at ¶ 76). However, Plaintiff fails to establish any wilfulness on Kiewit's part. Moreover, courts, examining similar claims, have determined that allegations of an employee's wilful acts do not establish the wilful misconduct exception regarding a negligent supervision claim against an employer. *See Lewis v. Arizona*, 2011 WL 3665367, *3 (D. Ariz. 2011) ("[E]ven if…any [] employee acted wilfully when they allegedly harassed Plaintiff, Plaintiff's claim for negligent supervision and hiring against Defendant does not come under the wilful misconduct exception of Arizona's workers' compensation statute."); *Rosen v. Community Educ. Centers, Inc.*,

2010 WL 3981200, *4 (D. Ariz. 2010) (same).

Consequently, Plaintiff's Count III for negligent supervision claim is dismissed. However, this dismissal is without prejudice because, based on the information before the Court, it cannot be said that any amendment would be inherently futile.

### D. Vicarious Liability

Lastly, Defendant argues that Plaintiff has not sufficiently pled vicarious liability. However, the FAC contains sufficient factual allegations to establish vicarious liability.

"Under the doctrine of respondeat superior, an employer is vicariously liable for the negligent work-related actions of its employees." *Kopp v. Phys. Group of Arizona, Inc.*, 421 P.3d 149, 151 (Ariz. 2018) (citation omitted). "For an employer to be held vicariously liable for an employee's negligent acts, the employee must be (1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business." *Engler v. Gulf Interstate Engr., Inc.*, 258 P.3d 304, 309 (Ariz. Ct. App. 2011), aff'd, 280 P.3d 599 (Ariz. 2012).

While an allegation that "Defendant is liable for the actions of its employee, Robert Young, under the doctrine of *respondeat superior*" is conclusory, this allegation is supported by a claim that Defendant Young was acting as Kiewit's foreman when he engaged in the conduct. (Doc. 9 at ¶¶ 49–50). Plaintiff has further alleged that Young instructed colleagues to move a portable toilet and threatened her with machinery used on construction sites. (*See id.* at ¶¶ 31, 34, 38). Allegations such as these allow one to reasonably infer that the Young's conduct occurred during working hours, while he was performing his duties as foreman. *See Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1051 (9th Cir. 2012) (drawing reasonable inferences in favor of the non-moving party on a motion to dismiss). At bottom, Plaintiff has alleged that "[a]ll of the incidents described herein occurred during work hours, on the worksite, incidental to Young's duties or in part to serve the purpose of Kiewit" (*Id.* at ¶ 72), which adequately provides Defendant notice of the vicarious liability alleged against Kiewit.

### IV. Motion to Strike

Defendant filed a Request for Judicial Notice in support of its Reply to its Motion to Dismiss. (Doc. 19). Plaintiff filed a Response in Opposition to Defendant's Request. (Doc. 20). Defendant subsequently filed a Motion to Strike Plaintiff's Response, arguing that the Response is an inappropriate sur-reply. (Doc. 21).

The Court did not take judicial notice of the documents requested by Defendant as it was not necessary to assess the viability and sufficiency of Plaintiff's FAC. Upon determining that judicial notice was unnecessary to resolve Defendant's Motion to Dismiss, the Court did not further consider Defendant's Request and therefore did not consider Plaintiff's Response in rendering this Order. As a result, Defendant's Motion to Strike is denied as moot.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's FAC (Doc. 12) is **GRANTED** in part and **DENIED** in part. Plaintiff's Count III negligent supervision and training claim is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Response (Doc. 21) is **DENIED** as moot.

Dated this 19th day of February, 2026.

Honorable Diane J. Humetewa
United States District Judge